UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

       v.                                   CRIMINAL ACTION NO. 2:02cr29

RAJUL RUHBAYAN,

             Defendant.

## MEMORANDUM OPINION

This matter comes before the court for defendant Rajul Ruhbayan's resentencing pursuant to the Court of Appeals for the Fourth Circuit's remand consistent with <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), and its progeny.  Defendant is resentenced in accordance with this Memorandum Opinion and the Judgment Order entered on November 14, 2005.

## I. Factual and Procedural History

Defendant is resentenced on convictions by a jury, following a trial conducted in 2003, of offenses that arise from a scheme, organized and directed by defendant, to present false testimony in defendant's previous federal criminal trial conducted in 2000.

## A.   2000 Criminal Case

### 1.   Trial

Between August 30, 2000, and September 5, 2000, defendant was tried before United States District Judge Henry Coke Morgan, Jr., on several drug and firearm charges, including Felon in Possession of a Firearm, Conspiracy to Distribute and Possess with Intent to

Distribute Cocaine Base, and Use of a Firearm in a Drug Trafficking Crime.[1]  At the trial of these charges, law enforcement officers testified to finding "crack" cocaine and cash in defendant's possession incident to defendant's arrest in Martinsville, Virginia, on April 8, 2000; discovering a loaded semi-automatic pistol concealed in the back seat of defendant's van incident to defendant's arrest in Suffolk, Virginia, on April 14, 2000; and discovering drug residue, drug paraphernalia, and firearms-related materials in defendant's Suffolk, Virginia, home incident to execution of a search warrant on April 14, 2000.

Yolanda Goodman, defendant's girlfriend, who was a convicted felon, testified for the defense.  She declared that she owned the pistol discovered in defendant's van; she had concealed the pistol in defendant's van without his knowledge; and she had never seen defendant with either firearms or drugs.  Corroborating Ms. Goodman's testimony, defendant testified that he did not own the pistol discovered in his van; he did not know that a pistol was

---

[1] Defendant was tried on an August 25, 2000, second superseding indictment, which charged defendant with the following five offenses:  (1) Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2);  (2) Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(c);  (3) Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1);  (4) Use of a Firearm in a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1);  and (5) Opening and Maintaining a Place for the Purpose of Manufacturing, Distributing, and Using Cocaine Base, in violation of 21 U.S.C. § 856(a)(1).

concealed in his van; and he was not a drug dealer.  On September 5, 2000, the jury returned a verdict of not guilty of all counts of the indictment, but guilty of two lesser included offenses: Conspiracy to Possess Cocaine Base and Possession of Cocaine Base.

    **2.**   **Sentencing**

The Presentence Investigation Report ("PSR") prepared on October 23, 2000, and addenda prepared on November 21, 2000, and December 1, 2000, assigned defendant a total offense level of eight.  See 10/23/00 PSR, Worksheet A.  The PSR recommended a criminal history category of IV, but noted that category IV may not adequately reflect the seriousness of defendant's past criminal conduct or the likelihood that he would commit future crimes.  See id. ¶ 84, at 19.

Defendant's sentencing hearing was held on December 7, 2000. After finding that, absent a departure, defendant's criminal history category should be a III, the court concluded that category III did not adequately reflect the seriousness of defendant's past criminal conduct.  Accordingly, the court departed, pursuant to U.S.S.G. § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), and increased defendant's criminal history category from a III to a V.  Defendant was sentenced to 24 months imprisonment:  12 months on Count Two and 12 months on Count Three, all to be served consecutively.  Defendant appealed his conviction and sentences, arguing, inter alia, that the departure in criminal

history category, pursuant to § 4A1.3, was erroneous.  See United States v. Ruhbayan, 15 Fed. Appx. 116, 118 (4th Cir. 2001) (unpublished), cert. denied 534 U.S. 1006 (2001).  The Fourth Circuit affirmed defendant's conviction and sentences, finding, inter alia, that the departure in criminal history category was not erroneous.  See id. at 118-19.

## B.   2003 Criminal Case

### 1.   Trial

After testifying under oath in defendant's 2000 trial that she possessed the pistol discovered in defendant's van, Ms. Goodman was indicted for being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1).  Following her indictment, Ms. Goodman recanted her testimony that she possessed the pistol.  She admitted that she testified falsely in defendant's 2000 trial, at defendant's direction, to assist defendant in avoiding convictions.[2]  Defendant's role in the scheme to present false testimony was evidenced in more than 50 letters produced by Ms. Goodman, which letters defendant had written and sent to her while defendant's 2000 trial was pending, directing Ms. Goodman to confess to possession of the pistol to defendant's trial lawyer and then to testify falsely to possession of the pistol in defendant's

---

[2] Ms. Goodman subsequently pled guilty to a one-count criminal information charging her with Obstruction of Justice, in violation of 18 U.S.C. § 1503.  On August 21, 2001, Ms. Goodman was sentenced to 46 months imprisonment.

2000 trial.[3]

The letters were admitted into evidence in the trial conducted between October 20, 2003, and October 27, 2003, of the following charges committed in connection with this false testimony scheme: (1) Conspiracy to Commit Perjury and Obstruction of Justice, in violation of 18 U.S.C. § 371; (2) Corruptly Influencing and Attempting to Influence the Testimony of a Witness, in violation of 18 U.S.C. § 1512(b)(1); (3) Perjury in a Court Proceeding, in violation of 18 U.S.C. § 1623; (4) Suborning of Perjury, in violation of 18 U.S.C. § 1622; and (5) Obstruction of Justice, in violation of 18 U.S.C. § 1503.[4]   At the trial, law enforcement officers testified to their arrests of defendant, their search of his home, and the drugs and firearms-related items seized incident to the arrests and the search.   Ms. Goodman testified that her testimony in defendant's 2000 trial was false, and, in fact, she had never possessed the pistol found in defendant's van; she had observed defendant with firearms; and defendant had engaged in

_____

[3] Defendant first directed Ms. Goodman to find a non-felon to claim possession of the pistol.  When a non-felon was not found, defendant induced Ms. Goodman to claim possession of the pistol. For example, on about August 15, 2000, defendant wrote to Ms. Goodman: "[Y]ou may have to give up 10-18 months, but the blessing and reward for your sacrifice to the will of Allah and the sun will place you in the arms of a man who will never let you go."

[4] On April 10, 2002, the court denied defendant's motion to dismiss the indictment on collateral estoppel grounds.  The Fourth Circuit affirmed the court's ruling in United States v. Ruhbayan, 325 F.3d 197 (4th Cir. 2003).

substantial drug trafficking activities.   Two other witnesses
testified to selling defendant "crack" cocaine on a weekly basis
from January, 1999, through December, 1999.   On October 27, 2003,
the jury returned a verdict of guilty of all counts.

### 2.   Sentencing

According to the PSR prepared on December 23, 2003, and
addendum prepared on January 27, 2004, defendant's conviction of
Corruptly Influencing and Attempting to Influence the Testimony of
a Witness, in violation of 18 U.S.C. § 1512(b)(1), subjected him to
a statutory maximum sentence of life imprisonment.   See 12/23/03
PSR at 2.   The PSR assigned defendant a base offense level of 30,
which is calculated as follows:[5]   U.S.S.G. § 2J1.3 provides a base
offense level of 14 for the offenses of perjury or suborning
perjury.   However, if the perjury or suborning perjury occurred in
respect to a criminal offense, then § 2J1.3 permits application of
U.S.S.G. § 2X3.1, instead of § 2J1.3, if the offense level
calculated under § 2X3.1 is greater than the level provided under
§ 2J1.3.   See U.S.S.G. § 2J1.3(c)(1).   If § 2X3.1 applies, then a
defendant's base offense level for perjury or suborning perjury is
calculated as if he were convicted as an accessory to the criminal
offense in respect to which he committed perjury or suborning

---

[5] The Guideline range for the instant offenses of conviction is
calculated according to the 2003 edition of the United States
Sentencing Commission Guidelines Manual.

perjury ("the underlying offense").[6]   Under § 2X3.1, the base offense level for a defendant convicted as an accessory is six levels lower than the offense level for the underlying offense, up to a maximum of level 30.   See U.S.S.G. § 2X3.1.

Applying § 2X3.1, the PSR identified Conspiracy to Possess with Intent to Distribute Cocaine Base as an underlying offense.   See 12/23/03 PSR, Worksheet A.[7]   The base offense level for this underlying offense is calculated according to the weight of cocaine

---

[6] The commentary accompanying § 2J1.3 explains that application of § 2X3.1 is permitted because the Sentencing Commission "believes that perjury should be treated similarly to obstruction of justice." U.S.S.G. § 2J1.3, comment. (backg'd). U.S.S.G. § 2J1.2, the Guideline section providing the offense level for obstruction of justice, similarly permits application of § 2X3.1 in lieu of § 2J1.2. See U.S.S.G. § 2J1.2(c). The commentary accompanying § 2J1.2 explains that application of § 2X3.1 is permitted because obstructive conduct is "frequently part of an effort to avoid punishment for an offense that the defendant has committed," and application of § 2X3.1 "will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense." U.S.S.G. § 2J1.2, comment. (backg'd).

[7] Defendant clearly committed suborning perjury with respect to both the drug and firearm offenses for which he was tried in 2000. Defendant was found guilty of Count One of the indictment, which charges him with Conspiracy to Commit Perjury and Obstruction of Justice by contacting and attempting to contact potential witnesses who would be willing to testify falsely in his 2000 trial regarding the pistol discovered in his van, his possession of firearms, and his drug dealing. Defendant was found guilty of Count Four of the indictment, which charges him with Suborning Perjury by procuring Ms. Goodman's false testimony that she possessed the pistol discovered in defendant's van, defendant never possessed firearms, and she never saw defendant sell drugs. Defendant was also found guilty of Count Five of the indictment, which charges him with Obstruction of Justice by directing Ms. Goodman to make false statements about her knowledge of his possession and distribution of "crack" cocaine.

base that the defendant is attributed with possessing. See U.S.S.G. § 2D1.1(c). Based on a law enforcement officer's testimony of the weight of "crack" cocaine and the amount of cash found in defendant's possession incident to his April 8, 2000, arrest, and two other witnesses' testimony of the weight of "crack" cocaine that they sold defendant on a weekly basis from December, 1999, through January, 1999, defendant was attributed with possessing 905.36 grams of "crack" cocaine. See 12/23/03 PSR ¶¶ 5, 8, 12, at 5-7, A-2, Worksheet A. Possession of 905.36 grams of "crack" cocaine or cocaine base resulted in a base offense level of 36. See U.S.S.G. § 2D1.1(c)(2). Possession of a dangerous weapon during the offense resulted in a two-level increase. See U.S.S.G. § 2D1.1(b)(1). Thus, the offense level for the underlying offense was 38. Applying § 2X3.1, the base offense level for an accessory to this offense is six levels lower than 38, up to a maximum of level 30. See U.S.S.G. § 2X3.1. Accordingly, defendant was assigned a base offense level of 30. See 12/23/03 PSR, Worksheet A.

The PSR recommended two enhancements to defendant's offense level: A two-level enhancement, pursuant to U.S.S.G. § 3B1.1(c), for his organizational and leadership role in the instant criminal activity, and a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for the obstruction that resulted from the instant

offenses. Id. ¶¶ 44, 45, at 12, 13, Worksheet A.[8]  Defendant's total offense level of 34, combined with a recommended criminal history category of III, the same category attributed to him, prior to departure, in the PSR prepared following defendant's 2000 trial, resulted in a Guideline range of 188-235 months.  See id., Worksheet C, Worksheet D.  Similar to the PSR prepared following defendant's 2000 trial, the December 23, 2003, PSR noted that the criminal history category prescribed by the Guidelines may not adequately reflect the seriousness of defendant's past criminal conduct or the likelihood that he would commit future crimes.  See id. ¶ 124, at 31-32.  Additionally, the December 23, 2003, PSR noted that a Guideline sentence may not adequately account for aggravating circumstances that are present in this case.  See id. ¶ 125, at 32.

Defendant's sentencing hearing was held on February 4, 2004. Defendant disputed portions of the PSR that attributed him with certain weights of cocaine base, arguing that the weights of cocaine base were predicated on the unreliable testimony of trial witnesses.[9]  Both defendant and the government objected to the recommended two-level enhancement to offense level, pursuant to

---

[8]  A reduction in offense level for acceptance of responsibility was not recommended.  12/23/03 PSR ¶ 46, at 12.

[9]  Defendant also objected to the conversion of cash, found in his possession incident to his April 8, 2000, arrest, to an equivalent amount of cocaine base.

§ 3B1.1(c), for defendant's organizational and leadership role in the instant criminal activity.  Defendant argued that § 3B1.1 was inapplicable, and he should not receive an enhancement under this section.  The government argued that defendant should receive a four-level enhancement, pursuant to § 3B1.1(a), rather than a two-level enhancement, pursuant to § 3B1.1(c), because defendant was an organizer and leader in a criminal activity that involved five or more participants or was otherwise extensive.  Finally, the government moved for an upward departure in the criminal history category, pursuant to § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), and upward departures from the Guideline range, pursuant to U.S.S.G. §§ 5K2.9 (Criminal Purpose), 5K2.7 (Disruption of Governmental Function), and 5K2.0 (Grounds for Departure).

The court overruled defendant's objection to the portions of the PSR attributing him with certain weights of cocaine base, finding that the witnesses, on whose testimony the weights were predicated, were credible, and the weight of cocaine base that defendant was attributed with possessing was established by a preponderance of the evidence.  See Transcript of Proceedings held on February 4, 2004 (filed on March 26, 2004) (hereinafter "3/26/04 Tr.") at 17-20.[10]  The court sustained the government's objection

---

[10] In ruling on this objection from the bench, the court stated:  "I had an opportunity to observe these witnesses myself and hear the testimony.  I have been doing this for a very long

to the recommended two-level § 3B1.1(c) enhancement to the offense
level, ruling that defendant should receive a four-level
enhancement, pursuant to § 3B1.1(a), for being an organizer and
leader in a criminal activity that was otherwise extensive. Id. at
52. The court reasoned that the offense was "otherwise extensive"
under United States v. Ellis, 951 F.2d 580 (4th Cir. 1991), because
it involved at least one other criminal participant, Ms. Goodman,
and numerous other persons who were unwitting participants,
including defendant's trial lawyer, the lawyer's staff, and the
twelve jurors who returned verdicts based on the false testimony
presented in defendant's 2000 trial. Id. at 49-52.[11] Accordingly,

_____

time, and I would find that those two witnesses are quite credible
and that there is no error in the presentence report." 3/26/04 Tr.
at 19-20. Additionally, the court found that the cash found in
defendant's possession incident to his April 8, 2000, arrest was
properly converted to cocaine base under the applicable Guideline
section. Id. at 20-21.

[11] The commentary accompanying § 3B1.1 provides that "[i]n
assessing whether an organization is 'otherwise extensive,' all
persons involved during the course of the entire offense are to be
considered. Thus, a fraud that involved only three participants
but used the unknowing services of many outsiders could be
considered extensive." See U.S.S.G. § 3B1.1, comment. (n.3); Id.,
comment. (n.1) (defining "participant" as "a person who is
criminally responsible for the commission of the offense, but need
not have been convicted").
    Reasoning from note three, then designated note two, the
Fourth Circuit, in Ellis, held that the defendant's fraudulent
scheme to secure the West Virginia legislature's passage of a bill
favorable to a corporation, in which the defendant was a partner,
was extensive, because the scheme involved four major participants
and numerous other persons, including lobbyists, legislators, and
their staffs, who unknowingly participated in the scheme. See
Ellis, 951 F.2d at 585.
    This court found the facts in Ellis analogous to those present

the court increased defendant's offense level from 34, which reflected only a two-level enhancement, pursuant to § 3B1.1(c), to 36, to reflect a four-level enhancement, pursuant to § 3B1.1(a). Id. at 53. This increase in offense level increased defendant's Guideline range from 188-235 months to 235-293 months. See U.S.S.G. Sentencing Table.

The court then granted the government's motion for a departure in criminal history category, pursuant to § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), finding that a criminal history category of III "grossly understates" defendant's criminal history and his likelihood of being a repeat offender. 3/26/04 Tr. at 97.[12]  The court determined that category VI was a

_____

in the instant case. 3/26/04 Tr. at 51-52. This court explained, in an opinion entered after defendant's sentencing, that:

> Just as the lobbyists in Ellis sought to persuade West Virginia legislators to pass a particular bill without knowing of the underlying illicit circumstances, [defendant's trial lawyer] presented and argued perjured testimony to the jury without knowledge of its falsity or of defendant's scheme to obstruct justice. Similarly, both the jury at defendant's 2000 trial and the legislators in Ellis acted in the final step of effecting the respective criminal participants' frauds . . . As this court observed at defendant's sentencing, the frauds perpetrated by defendant attack the very core of our judicial system, just as the frauds perpetrated in Ellis went to the very core of our legislative system.

United States v. Ruhbayan, 302 F. Supp. 2d 634, 637 (E.D. Va. 2004), rev'd, 406 F.3d 292 (4th Cir. 2005).

[12] Section 4A1.3 provides "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an

proper criminal history category for defendant and articulated the following reasons for its departure:  Since his majority, defendant has engaged in nearly continuous criminal activity, only ceasing during periods of incarceration; he did not receive any criminal history points for numerous juvenile sentences or sentences imposed in his 2000 case; the instant offenses were committed while his 2000 trial was pending; and, in the court's experience, defendant is "one of the worst criminals" ever to appear before it.  Id. at 95-102.[13]  This increase from category III to category VI increased defendant's Guideline range from 235-293 months to 324-405 months. See id. at 109; U.S.S.G. Sentencing Table.

Finally, the court denied the government's motions for upward

---

upward departure may be warranted."  U.S.S.G. § 4A1.3(a)(1).

[13] In determining that category VI is a proper criminal history category for defendant, the court followed the analysis prescribed in United States v. Rusher, 966 F.2d 868 (4th Cir. 1992).  See 966 F.2d at 884-85 (holding that if a sentencing court determines that an upward departure in criminal history category is warranted, it must consider the criminal history categories in order, stating why a category does not adequately represent defendant's criminal history before considering a higher category). Noting that the Fourth Circuit affirmed Judge Morgan's decision to increase defendant's criminal history category from III to V, pursuant to § 4A1.3, the court found that, in the court's fifteen years of sentencing defendants, this particular defendant's criminal record is more serious than other defendants with criminal history categories of IV or V.  3/26/04 Tr. at 100.  Furthermore, the sentences imposed in defendant's 2000 case, for which he received no criminal history points, and the fact that the instant offenses were committed while his 2000 trial was pending could not factor into Judge Morgan's decision to increase defendant's category from III to V, but these facts could properly factor into the court's determination of the instant § 4A1.3 motion.  Id. at 96-97, 101.

departures, pursuant to §§ 5K2.9 (Criminal Purpose) and 5K2.7 (Disruption of Governmental Function), but granted the government's motion for upward departure, pursuant to § 5K2.0 (Grounds for Departure).[14]   The court found that although defendant's base offense level is calculated under § 2X3.1, which attempts to account for the seriousness of the underlying offense of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base,[15] § 2X3.1 does not take into account two aggravating circumstances of the underlying offense:   that defendant was a principal in the underlying offense and that defendant used a firearm in connection with the underlying offense.   See 3/26/04 Tr. at 106-07.   Had § 2X3.1 adequately accounted for these aggravating circumstances, defendant's base offense level would have increased eight levels, from 30 to 38.   Id. at 103-04.[16]   Concluding that a departure from

---

[14]  Section 5K2.0 provides that "[t]he sentencing court may depart from the applicable guideline range if . . . there exists an aggravating . . . circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described."  U.S.S.G. § 5K2.0(a)(1).

[15]  See supra at 6-8 (explaining the calculation of defendant's base offense level under § 2X3.1); supra n.6 (explaining that application of § 2X3.1 is intended to account for the seriousness of the offense with respect to which defendant committed perjury and suborning perjury).

[16]  Since § 2X3.1 was applied to calculate defendant's base offense level, the court concluded that the applicable guideline, § 2X3.1, generally accounts for the encouraged departure factor, the seriousness of the underlying offense.  See 3/26/04 Tr. at 105-07; United States v. Koon, 518 U.S. 81, 96 (1996) (holding that the

the applicable Guideline range was warranted, the court sentenced

defendant to life imprisonment:[17]   60 months on Count One; life on

Count Two; 60 months on Count Three; and 60 months on Count Four,

---

court is authorized to depart if the applicable Guideline does not take an encouraged departure factor into account at all).  Even though § 2X3.1 generally accounts for the departure factor, a departure may still be appropriate if the departure factor "is present to an exceptional degree or in some way makes the case different from the ordinary case where the factor is present." See Koon, 518 U.S. at 96.  The court concluded that two aggravating circumstances of the underlying offense are present to an exceptional degree, and the inability of § 2X3.1 to account for these aggravating circumstances warrants a departure pursuant to § 5K2.0.  See 3/26/04 Tr. at 106-07.

[17] The extent of the departure is justified by the court's conclusion that had § 2X3.1 adequately accounted for aggravating circumstances of the underlying offense, defendant would have a base offense level, prior to enhancements, of 38.  3/26/04 Tr. at 103-04.  Level 38 combined with criminal history category VI would result in a Guideline range of 360 months to life.  Id. at 101; See U.S.S.G. Sentencing Table.  The government argued that applying enhancements to level 38 based on defendant's role in the instant criminal activity and the obstruction that resulted from the instant offenses would result in a total offense level of 44, but the court did not adopt this reasoning in its ruling.  Compare 3/26/04 Tr. at 106-07 (statement by the court that "[f]actor number one is that it hasn't been taken into account that he was a principal in the underlying offense, which would be an offense level of 36.  And moreover, it hasn't been taken into account the underlying count for the use of a firearm during a drug-trafficking crime.  So you have eight points there, or two very important considerations, . . . and none of that has been taken into account in the calculation here of the Guidelines for his offense level), with id. at 115-17 (statement by the government that if the base offense level of 38 is enhanced four levels for defendant's role in the instant criminal activity and two levels for the obstruction caused by the instant offenses, defendant's total offense level would be 44, which would have exposed him to a Guideline sentence of life imprisonment).

all to be served concurrently.[18]  Defendant appealed his convictions
and sentences.

## II. Legal Standard

While defendant's appeal was pending, the United States Supreme
Court decided United States v. Booker, 125 S. Ct. 738 (2005).  The
Booker opinion is delivered in two parts.  The first part (the
"Sixth Amendment holding"), authored by Justice Stevens, holds that
a sentence, imposed under the Sentencing Reform Act of 1984
("SRA"), Pub. L. No. 98-473, 98 Stat. 1837, codified at 18 U.S.C.
§§ 3551 et seq., under which the Guidelines are binding or
mandatory on sentencing judges, violates the Sixth Amendment when
a fact found by the judge using a preponderance of the evidence
standard increased the sentence that the defendant would have
otherwise received based only on the facts that the jury found
beyond a reasonable doubt.  Booker, 125 S. Ct. at 749-56.  Justice
Stevens explained that "[i]f the Guidelines as currently written
could be read as merely advisory provisions that recommended,
rather than required, the selection of particular sentences in
response to differing sets of facts, their use would not implicate
the Sixth Amendment."  Id. at 750.  Accordingly, the second part
of the Booker opinion (the "remedial interpretation of the SRA"),

---

[18] Pursuant to the court's pre-trial rulings and the Fourth
Circuit opinion in United States v. Kenny, 973 F.2d 339 (4th Cir.
1992), the conviction on Count Five for Obstruction of Justice was
vacated on February 4, 2004, for sentencing purposes.

authored by Justice Breyer, remedies the Sixth Amendment infirmity in the federal sentencing scheme by severing and excising two provisions of the SRA, 18 U.S.C. § 3553(b)(1) (requiring sentencing courts to impose a sentence within the applicable Guideline range) and 18 U.S.C. § 3742(e) (setting forth appellate standards of review of sentences outside of the Guideline range), thereby rendering the Guidelines advisory.  Id. at 756-57.  The Supreme Court directed that both its Sixth Amendment holding and its remedial interpretation of the SRA apply to all cases on direct review.  See id. at 769.

Subsequently, in United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), the Fourth Circuit addressed a Booker error in a sentence raised for the first time on appeal, reviewing the sentencing decision for "plain error."  Hughes, 401 F.3d at 547-552.[19]  In Hughes, the Fourth Circuit held that a sentencing court's imposition of a sentence in violation of a defendant's Sixth Amendment rights under Booker constitutes "plain error" warranting reversal under Booker when the sentencing court could not have

---

[19] An error not raised in the district court must satisfy the plain error standard before it may be noticed and corrected by the court of appeals.  See United States v. Olano, 507 U.S. 722, 731-32 (1993).  To be noticed: (1) there must be an error; (2) it must be plain; and (3) it must have been prejudicial.  Id. at 732.  Even if an error not previously raised qualifies for notice, the court of appeals should not exercise its discretion to correct the error unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  Id. at 731-32 (internal quotation marks omitted).

imposed the sentence that it did, under mandatory Guidelines, without exceeding the relevant Sixth Amendment limitation, and the record provides no indication of what sentence the sentencing court would have imposed had it exercised its discretion under 18 U.S.C. § 3553 and treated the Guidelines as advisory. See id. at 547-556; see also United States v. Ebersole, 411 F.3d 517, 535 (4th Cir. 2005) (applying Hughes' plain error analysis); United States v. Washington, 398 F.3d 306, 312-13 (4th Cir. 2005) (same). The Fourth Circuit went on to explain the change in procedure wrought by Booker: "[i]n the wake of Booker . . . the discretion of a sentencing court is no longer bound by the range prescribed by the guidelines." Hughes, 401 F.3d at 546. A sentencing court must now comply with Booker's remedial interpretation of the SRA, by "first calculat[ing] (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing a sentence." Id.

Defendant raised a Booker error in his sentences for the first time in his pending appeal. See United States v. Ruhbayan, 406 F.3d 292, 299 (4th Cir. 2005).[20] Applying Booker's Sixth Amendment holding, the Fourth Circuit held that defendant's sentences,

---

[20] Defendant raised several other challenges to his convictions, and all were rejected by the Fourth Circuit. See Ruhbayan, 406 F.3d at 299-301.

imposed under mandatory Guidelines, violated the Sixth Amendment, because the fact that defendant was a leader of an "otherwise extensive" criminal activity was found by the judge using a preponderance of the evidence standard, that fact-finding supported the application of the four-level § 3B1.1(a) enhancement, and that enhancement increased the sentence that defendant would have otherwise received based only on the facts found by the jury.  See id. at 301.

Applying Hughes' plain error analysis, the Fourth Circuit determined that the Sixth Amendment error was prejudicial because "the sentences imposed on Ruhbayan were greater than those authorized by the facts found by the jury alone (as in Hughes), and were increased on the basis of judge-found facts" and "we have no indication as to what sentences the court would have imposed absent its impermissible fact-finding."  Ruhbayan, 406 F.3d at 302.[21] Since the Fourth Circuit determined that the Sixth Amendment error resulted in imposition of a total term of imprisonment greater than that authorized by the jury verdict, it vacated defendant's sentences and remanded for resentencing "consistent with Booker and

---

[21] The Fourth Circuit questioned whether the impermissible fact-finding supporting the application of the § 3B1.1(a) enhancement resulted in imposition of a total term of imprisonment greater than that authorized by the jury verdict because "successive calculations, including the upward departure under § 5K2.0 [Grounds for Departure], were premised upon the application of § 3B1.1(a)."  Ruhbayan, 406 F.3d at 302.  The Fourth Circuit cited no portion of the record in support of this statement.

its progeny." <u>Id.</u> at 302.   The Fourth Circuit opinion is hereinafter referred to as the "remand opinion."

Had the Fourth Circuit reached only the Sixth Amendment issue, its remand opinion would have simply mandated compliance with <u>Booker</u>'s remedial interpretation of the SRA.   <u>See id.</u> at 301-02. Since imposition of a sentence based on judicial fact-finding violates the Sixth Amendment only when the Guidelines are treated as mandatory, <u>Booker</u>, 125 S. Ct. at 750, so long as the court treats the Guidelines as advisory in resentencing, the court will not violate <u>Booker</u> by applying a Guideline section, including § 3B1.1(a), based on a fact found by the judge, including the fact that defendant was a leader of an otherwise extensive criminal activity.   The Fourth Circuit's ruling on the Sixth Amendment issue affects the procedure that must be followed in resentencing, not the merits of applying Guideline sections in resentencing.[22]

_____

[22] Applying <u>Hughes</u>, the Fourth Circuit determined that the imposition of defendant's sentence was in violation of his Sixth Amendment rights and constituted "plain error" because the court could not have imposed a life sentence, under mandatory Guidelines, without the fact-finding supporting the application of the § 3B1.1(a) enhancement. <u>See</u> <u>Ruhbayan</u>, 406 F.3d at 302. The Fourth Circuit made no conclusion that a life sentence was inappropriate under advisory Guidelines.   Under <u>Hughes</u>, the determination of whether the error affected the defendant's substantial rights must focus on the effect of the error on the sentence imposed under mandatory Guidelines and not on the effect of the error on the sentence that may be imposed in resentencing under advisory Guidelines. <u>See</u> <u>Hughes</u>, 401 F.3d at 551. Given that the Guidelines were mandatory at the time of defendant's sentencing, the record of defendant's sentencing provided no indication of what sentence the court would have imposed had it treated the Guidelines as advisory. <u>See</u> <u>supra</u> note 21.

The Fourth Circuit did not, however, reach only the Sixth Amendment issue.  The court analyzed the merits of applying the § 3B1.1(a) enhancement in resentencing, in light of the Fourth Circuit's interpretation of that Guideline section in <u>United States v. Ellis</u>.  See <u>Ruhbayan</u>, 406 F.3d at 302.  Disagreeing with the court's analogy to <u>Ellis</u>, the Fourth Circuit held that defendant's criminal activity was not otherwise extensive under <u>Ellis</u> and a four-level § 3B1.1(a) enhancement on that basis may not be applied in resentencing.  See <u>Ruhbayan</u>, 406 F.3d at 302-03;[23] <u>supra</u> at n.11 (summarizing the court's analogy to <u>Ellis</u>).  The Fourth Circuit did not address the merits of applying any other Guideline section in resentencing.  See <u>Ruhbayan</u>, 406 F.3d at 302-03.  Thus, the remand opinion affects the application of other Guideline sections only to the extent that application of those sections was based on application of § 3B1.1(a).  The § 4A1.3 departure was based exclusively on the Guideline criminal history category's under-representation of defendant's <u>prior</u> criminal conduct, and was not based on the court's determination that the <u>instant</u> criminal

---

[23] The Fourth Circuit distinguished between lobbyists, legislators, and their staffs in <u>Ellis</u> whose services "advanced" the criminal activity, and the jurors in defendant's case who were "objects" of defendant's criminal activity.  See <u>Ruhbayan</u>, 406 F.3d at 302-03.  Determining that only persons whose services advance the criminal activity may properly be considered in determining the scope of the activity, the Fourth Circuit concluded that defendant's criminal activity could not be considered "otherwise extensive" under § 3B1.1 (a).  <u>Id.</u>

activity was otherwise extensive.  See supra at 12-13 & n.13 (citing and quoting the transcript of defendant's first sentencing).  The § 5K2.0 departure was based exclusively on the inability of § 2X3.1 to adequately account for aggravating circumstances of the underlying offense, and was not based on the court's determination of the scope of the instant criminal activity.  See supra at 13-15 & n.16 (citing the transcript of defendant's first sentencing).  Moreover, the extent of the court's departure, pursuant to § 5K2.0, was not based on the four-level increase in offense level effected by the § 3B1.1(a) enhancement. See supra at 14-15 & n.17 (citing and quoting the transcript of defendant's first sentencing).  Thus, the remand opinion precludes application of the four-level § 3B1.1(a) enhancement, but does not affect the application of the other Guideline sections in resentencing.

## III.  Resentencing

Defendant's resentencing hearing was held on November 8, 2005. Even though the Supreme Court directed that its remedial interpretation of the SRA be applied to all cases on direct review, see Booker, 125 S. Ct. at 769, and the Fourth Circuit mandated that defendant be resentenced "consistent with Booker and its progeny," see Ruhbayan, 406 F.3d at 302, defendant argues that his due process rights, as informed by ex post facto principles, are violated by the retroactive application of Booker's remedial

22

interpretation of the SRA.[24]  Defendant's argument must be rejected
at the outset as contrary to the Supreme Court's directive, see
Booker, 125 S. Ct. at 769, contrary to the Fourth Circuit's
mandate, see Ruhbayan, 406 F.3d at 302, and contrary to
constitutional law, see United States v. Fox, 161 Fed. Appx. 277,
278 (4th Cir. 2006) (unpublished) (rejecting ex post facto
challenge to application of the Booker's remedial interpretation of
the SRA); United States v. Thomas, 154 Fed. Appx. 348, 350 (4th
Cir. 2005) (unpublished) (same).  See also Transcript of
Proceedings held on November 8, 2005 (filed on December 22, 2005)
(hereinafter "12/22/05 Tr.") at 8-10.[25]

---

[24] See Rogers v. Tennessee, 532 U.S. 451, 456-58 (2001)
(holding that while "limitations on ex post facto judicial
decisionmaking are inherent in the notion of due process," the Due
Process Clause does not incorporate the specific prohibitions of
the Ex Post Facto Clause).

[25] Prior to the conduct at issue, the United States Code gave
defendant fair warning that his contemplated conduct constitutes a
crime.  See Bouie v. City of Columbia, 378 U.S. 347, 354-55 (1964)
(holding that if judicial construction of a criminal statute is so
unforeseeable as to deprive the defendant of fair warning, it must
not be given retroactive effect).  The United States Code informed
defendant that the statutory maximum sentence for Corruptly
Influencing and Attempting to Influence the Testimony of a Witness
in connection with the trial of a criminal case is the maximum term
that could have been imposed for any offense charged in that
criminal case.  See 18 U.S.C. § 1512(b)(1), (i) (section (i) was
redesignated (j) by the 2002 Amendments) (2000 & West Supp. 2005).
The SRA in effect prior to Booker informed defendant that a judge
would engage in fact-finding to determine his sentence and could
impose a sentence up to the statutory maximum.  See 18 U.S.C. §§
3551 et seq. (2000).  Furthermore, courts of appeals that have
addressed an ex post facto claim based on Booker's remedial
interpretation of the SRA have rejected the claim.  See e.g.,
United States v. Jamison, 416 F.3d 538, 539-40 (7th Cir. 2005);

23

As mandated by the remand opinion, the court will resentence defendant by complying with <u>Booker</u>'s remedial interpretation of the SRA.  Since the court may not, in any event, impose a sentence outside of the statutorily prescribed range, the court will first respond to defendant's objection to the calculation of his statutory maximum sentence.  <u>See</u> <u>Hughes</u>, 401 F.3d at 546.  The court will next calculate defendant's Guideline range by responding to defendant's objections to the calculation of his offense level and by addressing the government's motions for departures pursuant to §§ 4A1.3, 5K2.9, 5K2.7, and 5K2.0, before analyzing "those factors set forth in § 3553(a)."  <u>See</u> <u>id.</u>  Finally, if the court determines that a sentence within the Guideline range does not serve the purposes of 18 U.S.C. § 3553, and decides to impose a sentence outside of the Guideline range, the court will explain its reasons for doing so, in light of the § 3553 factors.  <u>See</u> <u>id.</u>

## A.    **Statutorily Prescribed Range**

Defendant raised a new objection to the statutory maximum sentence of life imprisonment provided in the PSR for Corruptly Influencing and Attempting to Influence the Testimony of a Witness, in violation of 18 U.S.C. § 1512(b)(1), arguing that <u>Apprendi v.</u>

<u>United States v. Scroggins</u>, 411 F.3d 572, 575-78 (5th Cir. 2005); <u>United States v. Duncan</u>, 400 F.3d 1297, 1306-08 (11th Cir. 2005).

New Jersey, 530 U.S. 466 (2000),[26] prohibits increasing the penalty for this offense to life imprisonment. Defendant asserts that a § 1512 offense generally carries a statutory maximum sentence of 10 years incarceration, see 18 U.S.C. § 1512(b)(1) (2000), but since the court found that his § 1512 offense occurred "in connection with a trial of a criminal case," 18 U.S.C. § 1512(j) applied and increased the statutory maximum sentence from 10 years to the "maximum term that could have been imposed for any offense charged in such case," see 18 U.S.C. § 1512(j) (2000 & West Supp. 2005). Since defendant was charged in his 2000 case with Use of a Firearm in a Drug Trafficking Crime, an offense which carries a statutory maximum sentence of life imprisonment, defendant is subject to life imprisonment for violating § 1512. See 18 U.S.C. § 924(c)(1) (2000); United States v. Harrison, 272 F.3d 220, 226 (4th Cir. 2001) (stating that the maximum penalty for violating § 924(c)(1) is life imprisonment). Defendant argues that application of § 1512(j) is invalid under Apprendi because § 1512(j) was premised on the court's finding that defendant's § 1512 offense occurred "in connection with a trial of a criminal case," that fact increased the statutory maximum sentence from 10 years to life, and "there were no averments within the indictment that triggered the

---

[26] Apprendi held that "other than the fact of a prior conviction, any fact [whether labeled an element of an offense or a sentencing enhancement] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." See 530 U.S. at 490.

provisions of 18 U.S.C. § 1512(j) nor was the issue submitted to the jury for its determination." Defense Supplemental Position with Respect to Sentencing and Guideline Computations at 2.

Defendant's Apprendi challenge to the calculation of his statutory maximum sentence is without merit.[27] Although the fact that defendant committed the § 1512 offense "in connection with a trial of a criminal case" increased defendant's statutory maximum sentence from ten years to life, that fact was not found by the court. Rather, that fact was found by the jury which returned a verdict of guilty on Count Two charging defendant with the § 1512 offense. Count Two specifically charges that defendant did "knowingly and corruptly persuade, and attempted to persuade, another person, namely Yolanda Goodman, to testify falsely in an official proceeding, namely his pending criminal trial in the United States District Court for the Eastern District of Virginia, at Norfolk, titled United States v. Ruhbayan, Criminal Number 2:00 CR 86." Thus, contrary to defendant's assertion, the fact on which application of § 1512(j) is based was submitted to the jury

---

[27] Defendant's Apprendi challenge may also be disposable under the "mandate rule" because defendant did not raise an Apprendi challenge in the first sentencing or on appeal. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (explaining that the mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court"). However, "to the extent that the mandate of the appellate court instructs or permits reconsideration of sentencing issues on remand, the district court may consider the issue de novo . . . ." Id. at 67.

and proved beyond a reasonable doubt.  Accordingly, defendant's
objection to the statutory maximum sentence of life imprisonment
provided in the PSR was overruled.  12/22/05 Tr. at 11-13.  The
court finds that life imprisonment is defendant's statutory maximum
sentence.  Id. at 13.

**B.   Advisory Guideline Range**

    **1.   Base Offense Level**

    Defendant renews his challenge to the weight of cocaine base
with which he is attributed in the PSR and raises a new challenge
to the substance with which he is attributed.  Defendant asserts
that both the weight and the substance are predicated on the
unreliable testimony of trial witnesses.  The court's previous
finding that the witnesses, on whose testimony the weight and the
substance are predicated, were credible is not disturbed by either
Booker or the remand opinion.  See supra at 10 & n.10 (summarizing
the court's previous finding as to weight and substance); supra at
16-22 (discussing Booker and the remand opinion).  The court
previously found that the weight of the substance known as "crack"
or cocaine base was established by a preponderance of the evidence.
See supra at 10.  No new evidence on the weight or the substance
was presented in resentencing.  12/22/05 TR at 18.  Accordingly,
defendant's objection to the weight and substance was overruled,
and the court adopts the weight and substance attributed to
defendant in the PSR.  Id.  The court finds that defendant is

properly assigned a base offense level of 30.  See 12/23/03 PSR, Worksheet A.[28]

## 2.   **Organizer and Leader Enhancement**

In accordance with the remand opinion, the four-level § 3B1.1(a) enhancement that defendant received for being an organizer and leader of a criminal activity that was otherwise extensive must be removed.  See Ruhbayan, 406 F.3d at 302-03.  The two-level § 3B1.1(c) enhancement recommended in the PSR for being an organizer and leader of a criminal activity that did not involve five or more participants and was not otherwise extensive is unaffected by the remand opinion.  See id. at 302.[29]  Defendant renews his objection to the recommended two-level enhancement, arguing that Suborning of Perjury necessarily involves more than one participant, and defendant did not organize or lead the activities of Ms. Goodman, the only other participant.  The jury found defendant guilty of Count One, Conspiracy to Commit Perjury and Obstruction of Justice, which charges defendant with conspiring with Ms. Goodman to present false testimony and obstruct justice; Count Two, Corruptly Influencing and Attempting to Influence the

---

[28] See supra at 6-8 (explaining the calculation of defendant's base offense level under § 2X3.1).

[29] On appeal, defendant did "not challenge the sentencing court's determination that he was an organizer or leader within the meaning of § 3B1.1," see Ruhbayan, 406 F.3d at 302-03, and the Fourth Circuit did not address that determination in the remand opinion.

Testimony of a Witness, which charges defendant with corruptly influencing and attempting to influence the testimony of Ms. Goodman; and Count Four, Suborning of Perjury, which charges defendant with knowingly and corruptly inducing Ms. Goodman to present false testimony.   Ample evidence demonstrated that defendant organized the false testimony scheme and led Ms. Goodman by exercising "mind control" over her.   No new evidence on the scope of the criminal activity or defendant's role within it was offered in resentencing.  12/22/05 Tr. at 19-20.

Defendant's objection to the recommended two-level § 3B1.1(c) enhancement is without merit.  First, a § 3B1.1(c) enhancement may be applied to increase a base offense level for Suborning of Perjury so long as the defendant was an "organizer, leader, manager, or supervisor of one or more other participants."  <u>See</u> U.S.S.G. § 3B1.1, comment. (n.2).[30]  Second, Ms. Goodman is properly considered a "participant" in the false testimony scheme because she was convicted of Obstruction of Justice in connection with this

---

[30] <u>See also</u> <u>United States v. Miller</u>, 161 F.3d 977, 984-85 (6th Cir. 1998) (affirming application of § 3B1.1 to enhance a defendant's base offense level for suborning perjury where discussions regarding a false testimony scheme took place at defendant's home, defendant recruited people to participate in the scheme, and defendant kept a list of the people who agreed to testify falsely); <u>United States v. Lincoln</u>, 956 F.2d 1465, 1475 (8th Cir. 1992) (affirming application of § 3B1.1 to enhance a defendant's base offense level for suborning perjury where defendant asked another person to testify falsely in defendant's trial, arranged for the person to meet with and lie to a detective, and composed the false testimony that the person later presented in defendant's trial).

scheme.  See supra at n.2; supra at n.11 (quoting the Commentary's definition of "participant," which includes "a person who is criminally responsible").  Third, defendant exercised "a leadership and organizational role" within the meaning of § 3B1.1.  See id. comment. (n.4).[31]   Defendant's planning and organization of the scheme is evident in the letters, admitted as evidence in the 2003 trial, that defendant wrote and sent to Ms. Goodman directing her to testify falsely in defendant's 2000 trial.  See supra at 4-5 & n.3.  The control and authority that defendant exercised over Ms. Goodman is further evident in the jury's verdict of guilty on Counts One, Two, and Four.  See supra at 28-29; see also 12/22/05 Tr. at 20-21.   Accordingly, defendant's objection to the recommended two-level § 3B1.1(c) enhancement was overruled.  Id. at 19-23.  The court finds that defendant is properly assigned a total offense level of 34.  See 12/23/03 PSR Worksheet A;[32] 12/22/05 Tr. at 36.

        **3.   Guidelines Departures**

        The government renews its motions for departure in the

_____

    [31] The Commentary directs the court to consider various factors in assessing defendant's role including: "the exercise of decisionmaking authority . . . the recruitment of accomplices . . . the degree of participation in planning or organizing the offense . . . and the degree of control and authority exercised over others."  U.S.S.G. § 3B1.1, comment. (n.4).

    [32] In addition to the § 3B1.1(c) enhancement, defendant's base offense level is enhanced two levels, pursuant to § 3C1.1, see 12/23/03 PSR ¶ 45, at 13, Worksheet A, and defendant did not object to this enhancement.

criminal history category, pursuant to § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), and departures from the Guideline range, pursuant to §§ 5K2.9 (Criminal Purpose), 5K2.7 (Disruption of Governmental Function), and 5K2.0 (Grounds for Departure).  The Guideline departure sections, as policy statements of the Sentencing Commission, are relevant to the court's consideration of the range prescribed by the Guidelines.   The Fourth Circuit, in the remand opinion, did not address the merits of the court's departures in defendant's first sentencing pursuant to §§ 4A1.3 and 5K2.0.  See supra at 19-22.  No new evidence or legal arguments on the application of §§ 4A1.3 or 5K2.0 were presented in resentencing.  After reviewing the Guidelines and relevant case law, the court finds that a departure to criminal history category VI, pursuant to § 4A1.3, is warranted for the same reasons expressed in defendant's first sentencing.  See supra at 12-13 & n.13.   The Fourth Circuit found that an increase in defendant's criminal history category from a III to a V in defendant's 2000 criminal case was not erroneous, see Ruhbayan, 15 Fed. Appx. 118, and that increase in the criminal history category was not based on the additional facts that defendant received no criminal history points for sentences imposed in his 2000 case and that defendant committed the instant offenses while his 2000 trial was pending.  See 12/22/05 Tr. at 41-42.  After reviewing the Guidelines and relevant case law, the court also finds that a

departure from the prescribed Guideline range, pursuant to § 5K2.0, is warranted for the same reasons expressed in defendant's first sentencing. See supra at 13-14 & n.16.   Had the Guidelines adequately accounted for aggravating circumstances of the underlying offense, defendant's base offense level would have increased from level 30 to level 38.   Applying no enhancements to offense level, a total offense level of 38 combined with a criminal history category of VI would result in a Guideline range of 360 months to life.   See U.S.S.G. Sentencing Table.[33]   Thus, a sentence of 360 months to life is the sentence range available under the Guidelines.

## C.   Factors Set Forth in 18 U.S.C. § 3553(a)[34]

Considering and weighing the factors set forth in § 3553(a) is the final step under Booker's remedial interpretation of the SRA before imposing sentence.   Section 3553(a) requires judges to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "impose sentences that reflect the seriousness of

---

[33] In resentencing defendant, the court explained that its reasons for departing pursuant to §§ 4A1.3 and 5K2.0 in defendant's first sentencing were independent of and exclusive to its reasons for applying the § 3B1.1(a) enhancement for defendant's organization and leadership role in the offenses.   See 12/22/05 Tr. at 102-04.

[34] For a complete recitation of the court's consideration of the factors set forth in 18 U.S.C. § 3553, see the transcript of the resentencing proceedings.   See 12/22/05 Tr. at 91-109.

the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care," Booker, 125 S. Ct. at 765.  The court must also consider the kinds of sentences available and may not impose a sentence that represents an unwarranted sentencing disparity.  See 18 U.S.C. § 3553(a).

The nature and circumstances of the offenses do not weigh in defendant's favor.  See 12/22/05 Tr. at 91-92.  Defendant organized and directed a false testimony scheme while his 2000 trial was pending.  The purpose of the scheme was to deceive the jury, flaunt the guarantees of due process, and undermine the judicial system. Id. at 99.  Defendant induced Ms. Goodman's participation in the scheme by exploiting her feelings of love and loyalty for defendant.  Id. at 99; see supra n.3 (quoting one of defendant's letters to Ms. Goodman).  By inducing Ms. Goodman's participation, defendant knowingly subjected her to federal felony charges that were nearly certain to be brought whether or not the scheme was discovered:  Defendant subjected her to a perjury charge if the scheme was discovered, and a firearm charge if the scheme was not discovered.  Furthermore, by this scheme, defendant avoided convictions of offenses, for which he was subject to a statutory maximum sentence of life imprisonment, and of which significant incriminating evidence existed.  See 12/22/05 Tr. at 99-100; supra

33

at 2 & n.1.

Although defendant's very early history is marked by misfortune beyond his control, the history that defendant created in his adolescent and adult years, and the violent criminal characteristics that he developed, do not weigh in his favor. 12/22/05 Tr. at 93-94. Defendant, abandoned by his birth mother at eight months old, spent his early years in foster care before being adopted at age five. See 12/23/03 PSR ¶¶ 75, 77, at 24-25.[35] Defendant became involved in gangs and drugs in his adolescent years, and his adoptive parents were unable to control his delinquent behaviors. 12/22/05 Tr. at 96; see 12/23/03 PSR ¶ 77, at 25. Defendant's juvenile record is characterized by crimes of violence to persons and property. 12/22/05 Tr. at 95.[36] The crimes of violence continued into defendant's adulthood, as evident in adult convictions of Burglary, Use of a Firearm in Commission of a Felony, and Voluntary Manslaughter.[37] Id. at 96-97; See 12/23/03 PSR ¶ 55, at 17-18. Drug crimes were added to defendant's criminal

---

[35] Defendant claims that he suffered physical abuse at the hands of his adoptive mother. 12/23/03 PSR ¶ 76, at 25.

[36] Defendant's juvenile record includes charges of Petit Larceny, 12/23/03 PSR ¶ 48, at 14, Arson, id. ¶ 49, at 14, Felony Break and Enter, id. ¶ 49, at 14-15, Assault and Battery, id. ¶ 52, at 16, and Concealed Weapon, id.

[37] According to court records, defendant was originally charged with murder for forcing his way into a woman's apartment and shooting her in the neck with a .357 caliber revolver. 12/23/03 PSR ¶ 55, at 17-18. The jury returned a verdict of voluntary manslaughter. Id.

record following convictions in his 2000 trial.  12/22/05 Tr. at 97; See 12/23/03 PSR ¶ 61, at 19-20.

The nature and circumstances of defendant's offenses attack the very core of our judicial system.  12/22/05 Tr. at 99-100. Defendant's offenses demonstrate complete disrespect for the law and equal disrespect for the liberty of other individuals.  Id. at 98-100.  He has engaged in nearly continuous criminal activity, including crimes of violence and destruction, since his majority. Id. at 98-99.  Defendant is simply one of the most dangerous, hardened criminals that this court has ever seen.  Accordingly, the Court finds that a sentence of significant duration is needed to reflect the seriousness of his offenses, to promote respect for the law, to provide defendant just punishment for his offenses, to protect the public from future crimes by this defendant, and to deter defendant from committing future crimes.  See id. at 100-101. Defendant faces a statutory maximum sentence of life imprisonment, and a 360 month to life sentence under the advisory Guidelines.

## IV. Conclusion

Considering the advisory Guideline sentence range for defendant and the factors set forth in 18 U.S.C. § 3553(a), a sentence of life imprisonment is the reasonable and appropriate sentence within the statutorily prescribed range.  A life sentence is sufficient to comply with the purposes of § 3553 and does not create unwarranted sentencing disparities between this defendant

35

and other defendants with criminal records and underlying offenses of similar severity.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to counsel for defendant and to the Assistant United States Attorney.


**IT IS SO ORDERED.**


—————————————  /s/  —————————————
                                    Rebecca Beach Smith

Norfolk, Virginia

April 10, 2006

nunc pro tunc November 14, 2005[38]

---

[38] The court at resentencing reserved the option to file this Memorandum Opinion to memorialize its rulings from the bench.