**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA**

**v.**                                          **Criminal No. 2:02cr29**

**RAJUL RUHBAYAN,**

        **Defendant.**


**OPINION AND ORDER**

This matter is before the Court on Defendant's pro se motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 222. The Government filed a brief opposing Defendant's motion, ECF No. 224, to which Defendant replied, ECF Nos. 229-30. Defendant then moved to supplement his motion. ECF Nos. 232-34. For the reasons set forth below, Defendant's motion for compassionate release is **DENIED**.

**I. BACKGROUND**

Defendant was first sentenced to life imprisonment in 2004. ECF No. 74. That sentence was twice reimposed on remand, ECF Nos. 97, 127, then affirmed by the Fourth Circuit. United States v. Ruhbayan, 369 F. App'x 497, 500 (4th Cir. 2010). Defendant thereafter moved to vacate his sentence pursuant to 28 U.S.C. § 2255. ECF No. 139. That motion was denied, ECF Nos. 145, 150, and the Fourth Circuit dismissed Defendant's appeal, United States v. Ruhbayan, 460 F. App'x 209 (4th Cir. 2011).

On June 3, 2024, Defendant moved for compassionate release. ECF No. 206.  The motion was transferred to the undersigned on February 3, 2025.  ECF No. 212.  After briefing was complete, this Court dismissed the motion without prejudice for failure to exhaust administrative remedies.  ECF No. 221.  Defendant renewed his motion on May 9, 2025.  ECF No. 222.  The Government responded on June 11, 2025, declining "to request dismissal for failure to exhaust administrative remedies" while opposing Defendant's motion on the merits.  ECF No. 224, at 7.  Defendant's replies were docketed in February 2026.[1]  ECF Nos. 229-30.

While Defendant's motion seeking compassionate release was still pending, Defendant made three additional filings, each styled as a "Supplemental Motion for Reduction of Sentence," which he submitted together with two additional memoranda.  ECF Nos. 232-36.  The Court construes these motions as requests for leave to supplement the pending compassionate release motion, ECF No. 222, grants such leave, and fully considers Defendant's supplemental filings.  The motion is now ripe for decision.

## II. LEGAL STANDARD

A sentencing court generally lacks the authority to "modify a term of imprisonment once it has been imposed."  United States

---

[1] It appears Defendant may have filed his initial reply, ECF No. 229, before receiving the Court's Order, ECF No. 228, authorizing him to do so belatedly. He then filed a second reply, ECF No. 230, within the time permitted by that Order.  Considering the vagaries of prison mailing, and in deference to Defendant's pro se status, the Court has fully considered both submissions.

2

v. Davis, 99 F.4th 647, 653 (4th Cir. 2024) (quoting 18 U.S.C. § 3582(c)). The compassionate release statute is a limited exception to this default rule. "A court can grant a compassionate release motion" and reduce the defendant's term of imprisonment "if it finds that (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission' and (3) that the [18 U.S.C.] § 3553(a) factors weigh in favor of granting relief, 'to the extent that they are applicable.'" United States v. Burleigh, 145 F.4th 541, 547 (4th Cir. 2025) (quoting 18 U.S.C. § 3582(c)(1)).

The statute itself "does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." Id. (citation omitted). Instead, the statute refers to "policy statements issued by the Sentencing Commission." Id. (quoting 18 U.S.C. § 3582(c)(1)). In 2023, the Sentencing Commission issued an amended policy statement setting forth a list of circumstances which may individually or in combination constitute extraordinary and compelling reasons for a sentence reduction. Id. at 548 n.5; U.S.S.G. § 1B1.13. The policy statement provides, in relevant part, as follows:

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)** . . .
>
> (b) Extraordinary and Compelling Reasons.-- Extraordinary and compelling reasons exist under any

of the following circumstances or a combination thereof:

(1) <u>Medical Circumstances of the Defendant</u> . . .

(2) <u>Age of the Defendant</u> . . .

(3) <u>Family Circumstances of the Defendant</u> . . .

(4) <u>Victim of Abuse</u> [while in custody] . . .

(5) <u>Other Reasons</u>.--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) <u>Unusually Long Sentence</u>.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b). The policy statement further provides that rehabilitation "is not, by itself, an extraordinary and compelling reason." <u>Id.</u> § 1B1.13(d) (citing 28 U.S.C. § 994(t)). While rehabilitation "alone" cannot support compassionate release, rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

4

"To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis." United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024). First, a defendant seeking compassionate release bears the "burden of showing extraordinary and compelling reasons to warrant a sentence reduction." Burleigh, 145 F.4th at 550. Only if a defendant meets this burden must a court then consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) to determine how much of a reduction (if any) is appropriate. Id. at 548; see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022) ("[E]ven if a movant satisfies the threshold eligibility requirement for obtaining relief, a district court has discretion to grant or deny relief based on its assessment of the salient § 3553(a) factors.").

### III. DISCUSSION

Defendant raises two principal arguments. First, he claims that his "unusually long sentence" constitutes an extraordinary and compelling reason for a sentence reduction. ECF No. 222, at 1; U.S.S.G. § 1B1.13(b)(6). Second, he argues that his allegedly "illegal detention," tainted by "ongoing acts of procedural misconduct," ECF No. 222, at 1, presents similarly grave circumstances warranting a sentence reduction, see U.S.S.G. § 1B1.13(b)(5). For the reasons discussed below, Defendant has failed to demonstrate under either approach an extraordinary and

5

compelling reason meriting a sentence reduction. Even if he had succeeded in doing so, the Court would deny relief upon consideration of the record in light of the factors set forth at 18 U.S.C. § 3553(a).

### A. Extraordinary and Compelling Reasons

### 1. Unusually Long Sentence

A defendant may be eligible for a sentence reduction under U.S.S.G. § 1B1.13(b)(6) if he is able to demonstrate that (1) his sentence is "unusually long"; (2) "a change in the law . . . would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed"; (3) he has "served at least 10 years of the term of imprisonment"; and (4) "full consideration of the defendant's individualized circumstances" favors relief. U.S.S.G. § 1B1.13 (b)(6); see United States v. Cruse, No. 3:12cr146, 2024 WL 3257142, at *3 (W.D.N.C. July 1, 2024).

Defendant's life sentence, of which he has served at least 10 years, appears to qualify as "unusually long." Cf. United States v. Brown, 78 F.4th 122, 131 (4th Cir. 2023). However, Defendant has not demonstrated any "change in the law" that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed" today. U.S.S.G. § 1B1.13(b)(6).

In his effort to demonstrate such a disparity, Defendant relies on Section 404 of the First Step Act and "the Drug Minus

6

Two Amendment 782." ECF No. 222, at 1; ECF No. 230, at 10. Section 404(b) of the First Step Act of 2018 "gave retroactive effect to the Fair Sentencing Act" of 2010, which "changed the weight thresholds triggering certain statutory penalties for cocaine base offenses." United States v. James, 771 F. Supp. 3d 812, 815 (E.D. Va. 2025), aff'd, No. 25-6275, 2025 WL 3241561 (4th Cir. Nov. 20, 2025); see First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). Guidelines Amendment 782, which also applies retroactively, "lower[ed] the base offense levels assigned to different amounts of cocaine base." United States v. Wirsing, 943 F.3d 175, 179 (4th Cir. 2019) (quoting United States v. Peters, 843 F.3d 572, 575 (4th Cir. 2016)). Again, neither change would here produce the "gross disparity" that the policy statement envisions. U.S.S.G. § 1B1.13(b)(6).

To begin, neither the First Step Act nor the Fair Sentencing Act altered the statutorily prescribed maximum sentence of life imprisonment applicable to Defendant's conviction on Count Two, corruptly influencing and attempting to influence the testimony of a witness in violation of 18 U.S.C. § 1512(b)(1). Because this witness-tampering offense "occur[ed] in connection with a trial of a criminal case," the sentencing judge was authorized to impose "the maximum term that could have been imposed for any offense charged" in that underlying criminal case. 18 U.S.C. § 1512(j). Defendant was charged in the underlying case with a violation of

7

18 U.S.C. § 924(c)(1), a firearm offense punishable by up to life imprisonment. Id. § 924(c)(1). Notwithstanding the enactment of the First Step Act, this same statutory maximum would still apply if Defendant were sentenced today.[2] See id. §§ 924(c)(1), 1512(j). Consistent with this conclusion, Defendant has already been found ineligible for relief under the First Step Act because neither that Act nor the Fair Sentencing Act modified the statutory penalties for the perjury and witness-tampering offenses for which Defendant was sentenced. ECF Nos. 183-84, 198; see Wirsing, 943 F.3d at 185-86 (analyzing eligibility for relief under the Act).

That said, the First Step Act was just one aspect of a broader reassessment of "the disparity between crack cocaine and powder cocaine" in federal sentencing. United States v. Hardnett, 417 F. Supp. 3d 725, 731-33 (E.D. Va. 2019) (recounting the history of this "inequity" and various "attempt[s] to address" it). Separate from Congress's changes to the "statutory penalties" for crack cocaine offenses, the Sentencing Commission amended relevant "sentencing Guidelines ranges," including by adopting Amendment 782. Id. The sentencing judge did consult the pre-amendment drug-weight Guidelines when sentencing Defendant. United States v.

---

[2] Defendant argues "that the statutory maximum for section 924(c)(1) is now 5 years, not life." ECF No. 230, at 9 (citing Alleyne v. United States, 570 U.S. 99 (2013)). On the contrary, five years is the mandatory minimum. See Alleyne, 570 U.S. at 103-04 (quoting 18 U.S.C. § 924(c)(1)(A)). Although Section 403 of the First Step Act did modify the statutory mandatory minimum for certain second or subsequent § 924(c) convictions, the Act left unchanged the statutory maximum sentence of life imprisonment.

Ruhbayan, 427 F. Supp. 2d 640, 644-45 & n.5 (E.D. Va. 2006). Nevertheless, Defendant fails to show that applying the amended Guidelines "would produce a gross disparity between the sentence being served and the sentence likely to be imposed" thereunder. U.S.S.G. § 1B1.13(b)(6) (emphases added).

The operative calculation of Defendant's Guidelines range began with U.S.S.G. § 2J1.3, which generally provides for "a base offense level of 14 for the offenses of perjury or suborning perjury." Ruhbayan, 427 F. Supp. 2d at 644, 654 & n.28. However, since Defendant's perjurious offense "occurred in respect to [an underlying] criminal offense," the base offense level in his case was "six levels lower than the offense level for the underlying offense, up to a maximum of level 30." Id. at 644 (citing U.S.S.G. § 2X3.1). The sentencing judge "identified Conspiracy to Possess with Intent to Distribute Cocaine Base as an underlying offense" and attributed to Defendant possession of "905.36 grams of 'crack' cocaine or cocaine base," resulting in a base offense level of 36 under the 2003 version of the Guidelines. Id. at 644-45 & n.5. "Possession of a dangerous weapon during the offense" further increased the level for the underlying offense to 38. Id. at 645 (citing U.S.S.G. § 2D1.1(b)(1)). Subtracting six levels resulted in a base offense level of 32, greater than the § 2X3.1 maximum base offense level of 30, which the sentencing judge therefore used instead. Id. The court then applied a pair of two-level

9

"Chapter 3" Guidelines enhancements, for a total offense level of 34 before upward departures. Id. at 645, 654-55.

In contrast, under today's Guidelines, possession of 905.36 grams of cocaine base results in an initial base offense level of 32, rather than 36. U.S.S.G. § 2D1.1(c)(4). After the same two-level increase for possession of a dangerous weapon, § 2D1.1(b)(1), and the same subtraction of six levels per § 2X3.1, Defendant's base offense level would be 28. Adjusting for the same two Chapter 3 enhancements would result in a total offense level of 32 — two levels below the pre-departure total offense level of 34 under which Defendant was previously sentenced.

For Defendant, whom the sentencing judge assigned a criminal history category of VI, the Guidelines range at offense level 34 was 262-327 months, whereas the range at level 32 falls by roughly five years to 210-262 months. However, in considering the possibility of "a gross disparity between the sentence being served and the sentence likely to be imposed" now, U.S.S.G. § 1B1.13(b)(6), the recalculated Guidelines range "does not tell the whole story." United States v. Martin, No. 1:11cr48, 2025 WL 1092723, at *5 (M.D.N.C. Apr. 11, 2025). As the policy statement makes clear, the Court must "determin[e] the sentence likely to be imposed now." Id. (emphasis added). In reaching that ultimate determination, the Guidelines range is an important but not necessarily dispositive factor. See id.; Gall v. United States,

10

552 U.S. 38, 49 (2007) (explaining that "the Guidelines should be the starting point and the initial benchmark" but "are not the only consideration" when determining a sentence). For example, a simple comparison of Guidelines ranges does not in itself account for "the possibility . . . that the court would impose an above-guidelines sentence." Martin, 2025 WL 1092723, at *5.

In this case, the sentencing judge "left little doubt" that the same sentence would have been imposed "regardless of" the applicable Guidelines range. Cf. United States v. Darnelle, No. 24-4540, 2026 WL 595442, at *1-2 (4th Cir. Mar. 3, 2026) (citing United States v. Mills, 917 F.3d 324, 330 (4th Cir. 2019)). In connection with Defendant's first resentencing, the sentencing judge explained that Defendant's "base offense level would have increased from level 30 to level 38," which "would result in a Guideline range of 360 months to life," if the Guidelines had "adequately accounted for aggravating circumstances of the underlying offense." Ruhbayan, 427 F. Supp. 2d at 655. When Defendant was again resentenced, in 2009, the sentencing judge specifically noted that the sentence imposed "would be the same . . . regardless of whether crack or powder cocaine was involved in the underlying drug conspiracy trial." United States v. Ruhbayan, 601 F. Supp. 2d 746, 748-49 & n.5 (E.D. Va. 2009) ("Even if the crack cocaine amendments did apply to lower defendant's Guidelines range, the court would still impose the

11

statutory maximums under the sentencing factors of 18 U.S.C. § 3553(a) . . . ."), aff'd, 369 F. App'x 497 (4th Cir. 2010). On this record, Defendant has not demonstrated that a base offense level reduction of just two levels, from 30 to 28, would lead the sentencing judge, who is in "a superior position to find facts and judge their import," to impose a different sentence, let alone a grossly disparate sentence. United States v. Lawson, 128 F.4th 243, 250 (4th Cir. 2025) (quoting Gall, 552 U.S. at 51).

Moreover, based on the record of this case and this Court's own "historical experience" in sentencing, this Court similarly concludes that this "particular crime" and "offender" are so "unusual or extraordinary," id., that "the sentence likely to be imposed" now, U.S.S.G. § 1B1.13(b)(6), even accounting for intervening Guidelines amendments, is the statutory maximum of life imprisonment. Chief among the Court's concerns is the need "to afford adequate deterrence" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(B)-(C); cf. Transcript of November 8, 2005, Resentencing Proceedings (filed on December 22, 2005), Dkt. No. 103, at 98 (reiterating "with great strength and great conviction" the exceptional danger posed by Defendant to the public). As the presentence investigation report details, Defendant was convicted in 1995 of voluntary manslaughter after he "forced his way into the victim's apartment and shot her in the neck with a .357 caliber

12

revolver." ECF No. 164 ("PSR") ¶ 55. Within a year of his release from incarceration in August 1998, and apparently while he was still under state supervision, Defendant fired a ".22 caliber firearm" at an individual three times; he later told a co-conspirator "that he was going to kill this individual" but "needed a bigger gun" to do so. Id. ¶¶ 6, 55. On April 8, 2000, Defendant was arrested fleeing the scene of yet another shooting. Id. ¶ 12. When police arrested him again less than one week later, they found a semi-automatic pistol "concealed" in his vehicle. Id. ¶ 14.

After a grand jury indicted him, Defendant embarked on a brazen campaign of manipulation, subornation, and perjury. See id. ¶¶ 17-41. In doing so, he demonstrated a stark and alarming indifference toward the interests of others. See, e.g., id. ¶ 35.

Even after his conviction at trial, Defendant continued to deny wrongdoing. Id. ¶ 46. More recently, in the instant motion, Defendant persists in lodging unsupported allegations of "corruption and collusion" against him. ECF No. 222, at 8. This suggests that Defendant's troubling disinclination to accept full responsibility endures, notwithstanding his intonations elsewhere of enlightenment and remorse, see, e.g., ECF No. 230, at 15-18.

In sum, on the record currently before this Court, Defendant has not shown that "the sentence likely to be imposed at the time [his] motion [was] filed" is any different from "the sentence being served." U.S.S.G. § 1B1.13(b)(6).

13

Furthermore, a "full consideration of the defendant's individualized circumstances" also weighs against relief. Id. Defendant was already 25 years of age "at the time of the offenses," United States v. McCoy, 981 F.3d 271, 274 (4th Cir. 2020), and in any case the prolonged and deliberate character of his perjurious offense conduct "undermines the argument that his actions resulted primarily from youthful impulsivity," United States v. Brown, No. 2:11cr152, 2024 WL 3357836, at *6 (E.D. Va. July 10, 2024); see United States v. Johnson, No. 1:97cr314, 2023 WL 5049267, at *5 (E.D. Va. Aug. 8, 2023) (collecting authorities that suggest that cognitive maturation is generally complete by age 25). In addition, as already detailed, Defendant's commission of the instant offenses followed "significant prior criminal history." McCoy, 981 F.3d at 274.

As the Government acknowledges, Defendant "has only modest infractions from his period of incarceration" and "has made laudable rehabilitative efforts while incarcerated."[3] ECF No. 224, at 8. He has, for example, completed coursework on such topics as "Mind Set," "Legal Research," and "Employment and Career Readiness," see 206-1, at 4-13, and worked in numerous roles while in custody, ECF No. 222, at 6. Still, Defendant's rehabilitation record does not appear "so exemplary that it distinguishes him

---

[3] It is notable, however, that Defendant was sanctioned in 2013 for "fighting with another person," though he denied the charge. ECF No. 218-2, at 1.

14

from many other defendants." <u>United States v. Russell</u>, 729 F. Supp. 3d 584, 597 (E.D. Va. 2024).

Finally, while the difficult circumstances of Defendant's childhood are significantly mitigatory, <u>see, e.g.</u>, ECF No. 230, at 15-18; PSR ¶¶ 75-79, this factor is "eclipsed by [Defendant's] extensive criminal history and the severity of his conduct," <u>United States v. Cox</u>, 409 F. App'x 621, 623 (4th Cir. 2010), which he perpetrated <u>after</u> numerous juvenile adjudications and a substantial period of state incarceration as an adult, <u>see</u> PSR ¶¶ 47-73.

For the foregoing reasons, Defendant's request for relief based on an "unusually long sentence," U.S.S.G. § 1B1.13(b)(6), is unavailing.

## 2. Other Reasons

A defendant may be eligible for a sentence reduction under U.S.S.G. § 1B1.13(b)(5) if he "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4)" of the policy statement, "are similar in gravity to those" reasons.. U.S.S.G. § 1B1.13(b)(5). The circumstances on which Defendant here relies do not qualify.

Defendant rests this claim on what he considers to be "ongoing acts of procedural misconduct." ECF No. 222, at 1. In Defendant's view, his incarceration is the result of a "20-year cover-up of

corruption and collusion" by various "rogue court actors." Id. at 8 ("Defendant . . . assert[s] compelling and extraordinary reasons based on the Rogue Federal Judges' prong of USSG 1B1.13(b)(5)"); ECF No. 230, at 5 ("[A] concise gist of [Defendant's] Subsection (b)(5) [claim] is the circumstances of the four Rogue Judges and court appointed attorney's ongoing 20 year coverup . . . ."). However, Defendant is "foreclosed" from raising these arguments, which "challenge the validity of [his] conviction or sentence," in a motion for compassionate release, "no matter how" he "characterizes his request for relief." United States v. Ferguson, 55 F.4th 262, 270-72 (4th Cir. 2022). Because the only "other reasons" Defendant invokes are procedurally improper collateral attacks, this claim also fails.[4] U.S.S.G. § 1B1.13(b)(5).

## B. Statutory Sentencing Factors

A sentence reduction is appropriate under 18 U.S.C. § 3582(c)(1)(A)(i) only if a defendant establishes that extraordinary and compelling reasons warrant a sentence reduction and consideration of the statutory sentencing factors set forth at 18 U.S.C. § 3553(a) supports such a reduction. See Bethea, 54

---

[4] Defendant makes clear that "the ongoing Four rogue judge's coverup, and not rehabilitation, is the basis for [his] subsection (b)(5) contention." ECF No. 230, at 6. If Defendant did intend to invoke his "commit[ment] to the labor of rehabilitation," ECF No. 222, at 6, such rehabilitation could not "by itself" present an extraordinary and compelling reason warranting compassionate release. U.S.S.G. § 1B1.13(d). Additionally, for the reasons already noted, even the "combination" of Defendant's rehabilitation and the "other circumstances" of this case, id., is not "similar in gravity to" the circumstances described in the policy statement, id. § 1B1.13(b)(5).

F.4th at 831. Here, because Defendant's motion fails at the first step, the Court need not reach the § 3553(a) sentencing factors. However, the Court would in the alternative deny compassionate release based on the Court's consideration of those factors and "the totality of the record." Id. at 834.

Clearly, "the nature and circumstances of the offense and the history and characteristics of the defendant" are severe. 18 U.S.C. § 3553(a)(1), (2)(A). The Court especially underscores, however, the need "to afford adequate deterrence" and "to protect the public from further crimes of the defendant." Id. § 3553(a)(2)(B)-(C). While the Court considers and commends Defendant's record of rehabilitative pursuits while incarcerated, see id. § 3553(a)(2)(D); ECF No. 206-1, at 4-13; ECF No. 222, at 6-7; ECF No. 218, these efforts still do not suffice to assuage the Court's grave concerns regarding the safety of the public and the risk of recidivism. At this time, to address those concerns, the Court is convinced of the necessity of "the kind[] of sentence[]" already imposed. 18 U.S.C. § 3553(a)(3)-(4). Moreover, Defendant has not demonstrated that such a sentence entails an "unwarranted sentence disparit[y]" relative to similarly situated defendants. Id. § 3553(a)(6); see, e.g., United States v. Alston, 188 F. App'x 186, 187-88 (4th Cir. 2006).[5]

---

[5] Certainly, the Court does not suggest that Defendant may never demonstrate that a sentence reduction is appropriate in his case. The Court concludes only that, by his instant motion and on the record currently before the Court, Defendant has not made such a showing.

## IV. CONCLUSION

For the reasons explained above, Defendant's motion for compassionate release, as supplemented, is **DENIED**. ECF Nos. 222, 232-34. Defendant's "Emergency Motion to Expedite" is **DENIED** as moot. ECF No. 231.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to Defendant and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May  5 , 2026

18